**IN THE COURT OF APPEALS OF IOWA**

No. 16-0526
Filed August 17, 2016

**IN THE INTEREST OF T.S.L.,**
**Minor children,**

**D.L., Father,**
        Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin,

District Associate Judge.


        A father appeals the termination of his parental rights.  **AFFIRMED.**


        Christine A. Bisignano, Windsor Heights, for appellant father.

        Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

        Kimberly S. Ayotte of the Youth Law Center, Des Moines, for minor

children.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

In March 2016, the juvenile court terminated the father's parental rights to his child, T.S.L., born in 2007. The court found the State proved grounds for termination of his parental rights under Iowa Code section 232.116(1)(d), (e), and (f) (2015); termination was in the child's best interests; and no exceptions to termination found in 232.116(3) applied. The father now appeals, arguing the juvenile court should have granted him an additional six months to regain custody of his child. He also challenges the grounds for termination found by the court. We review his claims de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

Although the juvenile court found clear and convincing evidence to terminate the father's parental rights under three paragraphs of section 232.116(1), we need only find the evidence supports termination on one of these grounds to affirm. *See In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015). We will uphold an order terminating parental rights if the statutory grounds for termination are shown by clear and convincing evidence. *See id.* at 434. This burden of proof is met if there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *See id.* at 435.

Parental rights may be terminated under section 232.116(1)(f) where the following are found to have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The father does not dispute that the first three elements required for termination under paragraph (f) have been proved by clear and convincing evidence. Rather, he challenges only the fourth element—that the child could not be returned to his care—explaining: "The father is not incarcerated, and testified that he is not using illegal substances, and no evidence was presented that father[']s mental condition would result in the child not receiving adequate care." However, upon our de novo review, we find the State established the child could not be returned to the father's care and, for the same reasons, additional time for reunification was not warranted. *See* Iowa Code § 232.104(2)(b) (stating permanency can be deferred six months if the court finds the reason for the child's removal from the child's home "will no longer exist at the end of the additional six-month period").

Here, the child and the child's siblings, not at issue here, were removed from the care of their mother in January 2014, following allegations that the mother physically abused the children, among other things.[1] At that time, the father was incarcerated in federal prison. Ultimately, in approximately December 2014, the children were placed together in a foster home, where they have since remained.

The father was incarcerated in 2013 after he pled guilty to the crimes of "Distribution of a Mixture or Substance Containing Cocaine Base" and "Unlawful

---

[1] The mother's appeal of the termination of her parental rights to T.S.L. and the child's siblings was dismissed for failure to comply with Iowa Rule of Appellate Procedure 6.201(1)(b).

User in Possession of a Firearm." The federal presentence investigation report in that case advised that "based upon statements obtained from [the father] during an interview on March 13, 2012," the father began smoking marijuana at age fifteen, smoking "up to half a gram of marijuana daily." He was shot in the back in 2009, and although he spent several months in the hospital recovering, he continued to experience adverse physical effects and pain thereafter. The father reported he had "used marijuana and crack cocaine in the past to self-medicate" and had begun using crack cocaine at age twenty-one a few times a month when his body was sore. Even though the record shows he did not make any objections to those facts stated in the presentence report, the father denied at the termination-of-parental-rights hearing that he reported using crack cocaine.

The father was released and placed in home confinement in June 2015. He began visitation with the child, and from September to November 2015, he consistently attended those visits, which—except for the first two—occurred at his home, where he was confined. However, his visitation attendance became inconsistent after he moved to supervised release on November 2, 2015, even though the visits continued to take place at his home and he had no employment to preclude him from attending and was not known to be participating in any services. Eventually, the Iowa Department of Human Services (DHS) learned the father had admitted to using marijuana the day after he was moved to supervised release and had tested positive for marijuana on November 19 and December 1, 2015, in violation of the terms of his probation. He was referred to a treatment facility by the probation office "for intensive outpatient treatment." He not only failed to communicate to the DHS that he tested positive for marijuana

and was referred for treatment, he revoked his authorization for release of the information to the DHS. Although the father claimed he revoked his authorization because the DHS worker was "not doing her job right," "late with her paperwork," and "playing with [his] case," it is obvious he did so to prevent the DHS from learning of his positive tests.

The father adamantly testified in January 2016 that he had only used marijuana twice since he was released from prison—the two times he got caught in November and December 2015—and that he would not test positive for illegal substances at that time. However, he tested positive almost immediately; by the time of the continuation of the termination-of-parental-rights hearing in March 2016, the father was back to home confinement due to three new urine screens testing positive for marijuana. He was offered two options by his substance-abuse-treatment counselor due to his positive tests, but the father declined because "he already felt a significant amount of daily stress and that adding additional treatment services would compound these feelings." Yet, the father also declined mental-health counseling because he did not think he needed it.

Significantly, the father's testimony demonstrated he was unconcerned about the effects the time he spent in prison and his missed visits had upon the child. He minimized his missed visits as not being his fault or claimed he was not provided the correct information. Because of his missed visits and the resulting negative effect on the child, the father was then required to confirm he would be present for a visit by 12:30 p.m. the day of the scheduled visit. The father often failed to confirm the visit and once even missed a visit after he had confirmed it, causing the child and service provider to arrive only to have to cancel the visit, to

the child's detriment. The father also did not think the child needed therapy or medication, despite doctors recommending both and the child's noted progress since those treatments began. Even though the father had been out of the child's life for at least two years while in prison and had no idea of the child's behavioral issues at school, the father testified he did not believe the child needed medication "[b]ecause there was nothing wrong with him before I left, and I feel there's nothing wrong with him now."

The father claimed he was attending a parenting program he was directed to attend by the juvenile court, but there was no proof of his attendance. He testified he could not prove he went because "he did not know he needed to register or sign in," but when the program's instructor was contacted for verification, the instructor could not verify his attendance, advising the DHS worker he had a small group of participants in his program and would have known if someone was present but not registered.

Given the father's dishonesty, continued use of illegal substances, and lack of insight into how his actions affected the child, we find the State established by clear and convincing evidence the child could not be returned to the father's care at the time of the termination hearing. We are also unconvinced the reason for the child's removal would no longer exist if the father was given an additional six months' time. Though the father complains that the DHS worker's opinion—that the child needed permanency—was "conclusory," "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the

child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). The father had ample opportunities to demonstrate he could engage in services, refrain from substance abuse, and attend all of his visits with the child, but chose to do so minimally, at best. The father could not even refrain from using marijuana for two months, despite his knowledge that using could mean being sent back to prison or termination of his parental rights. The father continued to miss visits, demonstrating he either lacks the understanding of, or does not care about, his child's distress when he fails to attend visits. This goes hand in hand with the father's failure to acknowledge the child's need for therapy and medication. This child has been in his adoptive foster home for over a year with his siblings, with whom he shares strong bonds. This home has structure, and the child's behavioral issues have decreased substantially. It is clear that any additional time in limbo would not be in the child's best interests.

Because the State proved a ground for termination and a grant of additional time for the father to work toward reunification is not justified under these circumstances, we affirm the juvenile court's order terminating the father's parental rights.

**AFFIRMED.**